No. 38,506

TOKLAN ROYALTY CORPORATION, a corporation, JOHN H. LEAVELL and F. E. BERNSEN, Plaintiffs-Below, *Appellees*, v. PANHANDLE EASTERN PIPE LINE COMPANY, a corporation, Defendant-Below, *Appellant*, WALTER BOHNSTENGEL; ALBERT P. KLIEWER and EDNA N. KLIEWER; F. E. and NORMA S. GOULD; ROLLY J. GRESHAM; ELLEN J. GRUNDY; C. A. and LIZZIE HOFFMAN; CORA LEIERER; JOSEPH F. LINDSTROM; CLARA OSMOND; J. R. MANN; MORRIS L. REEVES; MARTHA K. SCHOLP, Executrix of the estate of WALTER H. SCHOLP; KENNETH E. SENTNEY; DAN C. and J. P. SULLIVAN; LILLIAN M. STUBBS; HENRY and HESTER G. WHITSON; JAMES A. WILLIAMSON; CHARLES HOFFMAN and C. E. HOFFMAN, Administrator of the estate of LIZZIE HOFFMAN, deceased; MINNIE BEASLEY, Administratrix of the estate of CALIFORNIA M. BURNHAM, deceased, Defendants-Below, *Appellees*.

(239 P. 2d 927)

Opinion filed January 26, 1952.

*Mark H. Adams,* of Wichita, and *Arthur G. Logan,* of Wilmington, Delaware, *Charles E. Jones, William I. Robinson, J. Ashford Manka* and *Orval L. Fisher,* all of Wichita, and *Edward H. Lange* and *C. R. Kirkbride,* both of Kansas City, Mo., were with them on the briefs for the appellant.

*A. D. Weiskirch,* of Wichita, argued the cause, and *Manford Holly, George B. Collins, C. L. Williams, Oliver Hughes* and *W. R. Martin,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for cancellation of a contract to purchase gas. The demurrer of defendant Panhandle Eastern Pipe Line Company was overruled and it has appealed.

This action was here once before. (See *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, 212 P. 2d 348.) At that time we reversed the judgment of the lower court overruling a demurrer to one cause of action stated in the petition and affirmed its judgment sustaining a demurrer to a second cause of action pleaded therein. The trial court when the cause again reached it permitted the filing of an amended petition naming additional parties defendant. After some motions directed at the amended petition, the plaintiffs filed a second amended petition. The demurrer to that petition was overruled. Panhandle has appealed.

This second amended petition alleged the incorporation of the Toklan Royalty Corporation and identified plaintiffs Leavell and Bernsen; that plaintiffs owned sixty percent of certain gas leases described in Exhibit "A" attached to the petition; that the Panhandle was taking gas from these leases by virtue of a gas purchase contract, marked Exhibit "B"; that every month from December 13, 1944, to October, 1947, Panhandle wrongfully breached the contract by refusing to pay plaintiffs the money due them under the contract.

The petition then set out five particulars in which Panhandle had breached the contract: (*a*) that the defendants in a case against Frank P. Parish, and others, and filed in the district court of Grant county, wrongfully attached these properties of plaintiffs and wrongfully procured the appointment of a receiver; (*b*) that about February 6, 1945, this action was removed to the United States District Court and the receivership was continued and the attached properties were held by the receiver and the revenue collected from the leases; (*c*) that on April 4, 1945, plaintiffs apprised Panhandle that the attachment was wrongful; that notwithstanding that, Panhandle wrongfully refused to permit the attachment to be dissolved and by conspiracy undertook to acquire title to plaintiff's interests by an offer to Frank Parish and Theodore F. Parish to dismiss the action against the Parishes provided they would join Panhandle in an attempt to set aside plaintiff's title; (*d*) that in furtherance of the above trickery Panhandle filed a reply in the action pending in the federal court seeking to have plaintiff's title

to the leases set aside. (Copies of these pleadings were attached to the petition); and (*e*) approximately three years after that wrongful attachment was instituted it was dissolved and the impounded monies were ordered returned to plaintiffs and were returned to them but Panhandle still questioned plaintiff's title to their leasehold estates.

The petition then alleged that Panhandle was dealing inequitably, and wrongfully with plaintiffs because the contract stipulated for the purchase of gas at four cents per thousand cubic feet and defendant was enjoying the benefits of a contract inimicable and inconsistent with the public welfare and it was unconscionable and improvident in law and equity due to the change in the basis of dollar values.

The petition then alleged that the wrongful, inequitable and unconscionable acts of Panhandle caused plaintiffs irreparable damage and gave rise to the right of cancellation of the contract in that (*a*) that from December, 1944, to October, 1947, plaintiffs were deprived of the use of the run money due them under the gas purchase contract and deprived them of the benefit of capital gains they would have made had this money been paid them; (*b*) that on account of the wrongful attachment Panhandle had prevented a merger between plaintiffs and the Aberdeen Petroleum Corporation; (*c*) that Panhandle by its unlawful acts had caused plaintiff to be put to expense for attorneys fees, witness fees, etc.; and (*d*) that defendant in holding plaintiffs to the terms of the contract and requiring them to sell gas at four cents per thousand cubic feet on the basis of prices existing at the time the gas purchase was entered into was causing waste of a natural resource.

The petition then alleged the injuries complained of were irreparable and that any damages that could be awarded would be inadequate and impossible of determination without speculation and that the continuing breaches of the gas purchase contract over a period of thirty-three consecutive months resulted in the plaintiffs having no adequate remedy at law.

The petition then alleged that the other defendants named, besides Panhandle were owners of the remaining interests besides those of plaintiffs. Attached to the petition was a schedule of leases covered by the contract, the gas service contract, a copy of the amended reply and counter-claim of plaintiffs in the case in federal court and the division of interest, and order for the wells on the leases set out.

The petition prayed that the gas purchase contract be canceled and for further equitable relief.

To this second amended petition Panhandle filed a special demurrer on the ground that it was not framed upon a distinct and definite theory, upon which theory the facts alleged stated a good cause of action in favor of the plaintiffs and against Panhandle and second that the matter of the gas purchase contract being unconscionable and improvident did not constitute a cause of action in favor of the plaintiffs and against the defendant.

Panhandle also filed a general demurrer on the ground it did not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against Panhandle; and that the court had no jurisdiction of the subject matter due to the non-joinder of indispensable parties.

These demurrers were overruled and Panhandle has appealed.

All the parties concede the gas purchase contract, which this action is brought to cancel, stated that the seller in that contract owned oil and gas leases on this 6,400 acres of land in Grant county. The contract covered wells drilled or to be drilled on those leases. The seller in this contract was R. K. Wilson. Through some transactions, which this record does not disclose, Frank Parish and his wife obtained title to 3,200 acres of these leases. Through another transaction, with which we need not bother, the Toklan Royalty Corporation, plaintiffs in this action, secured title to sixty percent of these 3,200 acres. When the case reached us in *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, supra, we said the owners of the other forty percent of the leases on these 3,200 acres were indispensable parties to the action. The individuals who were made new parties defendant in this action besides Panhandle are the owners of that forty percent.

The owners of the other 3,200 acres of the leases covered by Exhibit "B" have never been made parties to this action to cancel the contract. It is the absence of these parties that Panhandle refers to when it demurred to this second amended petition because of nonjoinder of indispensable parties. The Toklan Royalty Corporation argues here that they have no interest in the leases on this 3,200 acres. They argue that the gas purchase contract is severable and that they may have it canceled as to their interests even though owners to the leases on the other 3,200 acres do not so desire.

Plaintiffs state the rule to be that a contract embracing several

particulars though made at one time and about one affair may yet have the nature and operation of several different contracts when they admit of being separately executed and closed. They argue the contract in question embraced oil and gas leases executed by numerous landowners. They state each lease was a separate and distinct transaction. It seems the statement of this argument is its own refutation when applied to the facts in this record.

Panhandle was the buyer. It was not dealing with a group of landowners. It was dealing with one man, R. K. Wilson, whom the contract recited in the first paragraph owned gas, oil and gas leases on 6,400 acres of land. What he actually owned was what is termed the seven-eighths or working interest. The contract made no provision about the landowners or royalty owners as they are sometimes called. Of one fact we may be sure, when Panhandle and Wilson entered into this contract Panhandle was dealing with no one except Wilson and the contract clearly provided was buying the gas from wells drilled and to be drilled on ten different sections shown upon a map attached to the contract. Under the terms of the contract Wilson was to drill a well on each section or ten wells altogether. Wilson, the seller, agreed to construct the necessary individual well lines to each of the wells drilled and to connect them to the main gathering line to approximately a certain point. There were other provisions as to the pressure to be maintained at the wells and in Panhandle's main line.

It would not do for us to consider whether this contract should be set aside with only fifty percent of the owners of the working interest in the wells provided for under the contract here. There is grave danger that such an adjudication would jeopardize the rights of the parties not in court. The contract between Wilson and Panhandle is not severable.

Plaintiffs rely on a sentence from our opinion in *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, supra, where we said:

"Therefore, under our decisions the holders of forty percent interest are indispensable parties to the action, without whom the court could not render an effective decree of cancellation."

It is true that sentence does occur in the opinion. In the syllabus, however, we held:

"In an action for cancellation of a written instrument all persons whose rights, interests or relations with or through the subject matter of the suit will be affected by the cancellation are proper and necessary parties in order that they may have an opportunity to be heard and have their rights determined.

"Persons who are united in interest under the terms of a written instrument are indispensable parties to an action for its cancellation.

"When in an action of the character described in paragraphs 5 and 6 of this syllabus failure to join indispensable parties appears from the face of the petition the plaintiff not only lacks legal capacity to sue but has failed to state a cause of action and his pleading is demurrable upon either or both of such grounds.

"The record in an action for cancellation of a gas purchase contract examined and held, that it appears from the face of the petition persons having a unity of interest in the subject of the action, and therefore indispensable parties, are not joined as parties plaintiff or defendant. Held further, that under such conditions and circumstances the petition is demurrable in that (1) it affirmatively discloses the plaintiff lacks legal capacity to maintain the action, and (2) it fails to state a cause of action." (Syl. ¶¶ 5, 6, 7 & 8.)

We have demonstrated that the owners of all 6,400 of the acreage could by the contract between Wilson and Panhandle have such rights and interests in the contract that they are indispensable parties to an action to cancel it. For all the reasons given in *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.,* supra, the judgment of the trial court is reversed with directions to sustain the demurrer of defendant Panhandle Eastern Pipe Line Company.